IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| KATHY BOOTHE,<br><br>                    Plaintiff,<br><br>v.<br><br>DESERET MUTUAL BENEFIT ADMINISTRATORS, DESERET HEALTHCARE EMPLOYEE BENEFITS TRUST,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER**<br>  • **GRANTING [24] MOTION FOR SUMMARY JUDGMENT**<br>  • **DENYING [35] MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:16-cv-00008-DN<br><br>District Judge David Nuffer |

This is an ERISA case. Plaintiff Kathy Boothe's application under the ERISA plan (Plan) for disability benefits was denied by the Plan administrator, defendant Deseret Mutual Benefit Administrators (DMBA). The other defendant, Deseret Healthcare Employee Benefits Trust (Trust), is the Plan payor. DMBA and the Trust are collectively referred to as "Defendants." Boothe and Defendants cross move for summary judgment.[1] Each party opposes the other's motion.[2] Defendants reply in support of their motion.[3] Boothe did not.[4]

---

[1] Defendants' Motion for Summary Judgment and Supporting Memorandum (Defendants' Motion), docket no. 24, filed March 1, 2017; Plaintiff's Countermotion for Summary Judgment and Supporting Memorandum (Boothe's Motion), docket no. 35, filed May 1, 2017.

[2] Plaintiff's Response to Defendants' Motion for Summary Judgment (Boothe's Opposition), docket no. 33, filed May 1, 2017; Defendants' Memorandum in Opposition to Plaintiff's Cross-Motion for Summary Judgment (Defendants' Opposition), docket no. 43, filed June 12, 2017; Defendants failed to attach their opposition memorandum in their original filing, docket no. 37, filed May 30, 2017.

[3] Defendants' Reply Memorandum in Further Support of Motion for Summary Judgment, docket no. 36, filed May 15, 2017.

[4] Under DUCivR 7-1(b)(3)(A), "[a] reply memorandum to such opposing memorandum may be filed at the discretion of the movant within fourteen (14) days after service of the opposing memorandum." Because Defendants failed to attach their opposition memorandum to their initial filing, Boothe had until June 26, 2017, to file her reply. She failed to meet that deadline.

There are no disputed material facts. DMBA's decision to deny Boothe benefits was not

arbitrary and capricious. Therefore, Defendants' Motion is GRANTED, and Boothe's Motion is

DENIED.

**Table of Contents**

A.     Preliminary Rulings ................................................................................................ 2
    1.     Boothe may supplement the Record in part. ............................................. 2
    2.     There is no conflict of interest between the Trust and DMBA. ............................ 5
    3.     Nothing supports the allegation of supervisor interference. ................... 7
B.     Undisputed Material Facts ..................................................................................... 9
C.     Discussion ........................................................................................................... 16
    1.     DMBA's decision to deny Boothe benefits will be reviewed under the abuse of
           discretion standard. ................................................................................ 16
    2.     DMBA's decision to deny Boothe benefits was not arbitrary or capricious. ....... 18
    3.     ERISA § 501(a)(3) does not apply ........................................................ 21
D.     Order .................................................................................................................. 24

## A. PRELIMINARY RULINGS

Boothe makes numerous arguments that are best addressed at the outset. First, Boothe

argues that there are grounds to expand the administrative record.[5] Because this is an ERISA

case, the administrative record (Record) is significant. The Record should include the evidentiary

bases for DMBA's denial of benefits. Second, Boothe argues that there is a conflict of interest

between DMBA and the Trust.[6] And third, Boothe argues that her former supervisors interfered

with the review of her disability application.[7]

### 1. Boothe may supplement the Record in part.

Boothe argues that there is a conflict of interest between DMBA and the Trust and that

her former supervisors interfered with the claim review process.[8] To better address these

---

[5] Boothe's Opposition at 11–12.

[6] *Id.* at 12–15.

[7] *Id.* at 13–15.

[8] *Id.* at 11–15.

arguments, Boothe seems to be asking for additional discovery[9] and to be permitted to supplement the record with two documents,[10] her affidavit[11] and Social Security Administration Retirement, Survivors and Disability Insurance Notice of Award (Notice of Award).[12]

"It is the unusual case in which the district court should allow supplementation of the record."[13] Courts are prohibited "from considering materials outside the administrative record where the extra-record materials sought to be introduced relate to a claimant's eligibility for benefits."[14] "[I]nstances where the payor and the administrator are the same entity and the court is concerned about impartiality," however, may warrant the admission of additional evidence.[15] "[T]he party seeking to introduce [additional evidence must] demonstrate that it could not have been submitted to the plan administrator at the time the challenged decision was made."[16] "The party moving to supplement the record or engage in extra-record discovery bears the burden of showing its propriety."[17] "[T]he district court must bear in mind both the need for a fair and informed resolution of the claim and the need for a speedy, inexpensive, and efficient resolution of the claim."[18] The party seeking to expand the record should file a motion to that effect *before*

---

[9] *Id.* at 12.

[10] *Id.*

[11] Affidavit of Kathy Boothe in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment and Countermotion for Summary Judgment and Supporting Memorandum (Boothe's Affidavit), docket no. 34, filed May 1, 2017.

[12] Social Security Administration Retirement, Survivors and Disability Insurance Notice of Award (Notice of Award), docket no. 34-1, filed May 1, 2017.

[13] *Hall v. Unum Life Ins. Co. of America*, 300 F.3d 1197, 1203 (10th Cir. 2002).

[14] *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010).

[15] *Hall*, 300 F.3d at 1203.

[16] *Id.*

[17] *Murphy*, 619 F.3d at 1163.

[18] *Id.* at 1164.

the deadline for dispositive motions.[19] Indeed, the Tenth Circuit has specifically criticized plan participants for failing to raise the need to refer to extra-record evidence prior to filing or responding to a motion for summary judgment.[20]

In her opposition, Boothe states "[i]n order for Plaintiff to have [sic] privy to Defendants actions and bias it is imperative that she be allowed to present additional evidence outside of the administrative record."[21] It is not clear whether Boothe is seeking additional discovery. If so, she should have made this request as a motion and filed it prior to submitting her opposition and prior to filing her own motion for summary judgment. Regardless, she has not satisfied her burden of "showing its propriety."[22] Nothing suggests that it would result in a more "fair and informed resolution of the claim."[23] She has not demonstrated that it would be anything more than "an unwieldy, burdensome, and speculative fishing expedition."[24] It would undermine the "need for a speedy, inexpensive, and efficient resolution of the claim."[25] Therefore, Boothe may not engage in additional discovery.

Boothe seems to be arguing that she should be able to supplement the record with two documents.[26] In the section entitled "Additional Facts regarding conflict of interest,"[27] Boothe references her personal affidavit.[28] And in the section entitled "Additional facts regarding

---

[19] *Id.*

[20] *Wolberg v. AT&T Broadband Pension Plan*, 123 F. App'x. 840, 846 n.3 (10th Cir. 2005) (unpublished).

[21] Boothe's Opposition at 12.

[22] *Murphy*, 619 F.3d at 1163.

[23] *Id.* at 1164.

[24] *Id.*

[25] *Id.*

[26] Boothe's Opposition at 12–14.

[27] *Id.* at 3.

[28] *Id.* at 3–4.

substantial evidence of disability," Boothe references the Notice of Award.[29] The Notice of

Award is from the Social Security Administration Retirement, Survivors and Disability

Insurance.[30] Even though the affidavit could have been "submitted to the plan administrator at

the time the challenged decision was made,"[31] it is now part of the record and Boothe may refer

to it. The Notice of Award, however, "relate[s] to [Boothe's] eligibility for benefits."[32] As stated

above, presenting extra-record materials in an attempt to reargue the eligibility of benefits is not

permitted. The Notice of Award is not part of the record and Boothe may not refer to it.

DMBA may likewise refer to the Declaration of Pamela J. Larsen,[33] Declaration of Lisa

Bosley,[34] Declaration of Jana Sybrowsky,[35] and Declaration of Allison Neuteboom.[36] These

documents are limited to Boothe's arguments that there is a conflict of interest between the Trust

and DMBA and that her former supervisors interfered with the claims process.

## 2. There is no conflict of interest between the Trust and DMBA.

"Where a party is both the administrator and payor or insurer of a disability plan an

inherent conflict exists."[37]

Boothe makes the conclusory assertion that "DMBA acts as both the administrator and

the payor of the disability plan."[38] She continues, "Defendants have admitted as such that they

---

[29] *Id.* at 4.

[30] Social Security Administration Retirement, Survivors and Disability Insurance Notice of Award, docket no. 34-1, filed May 1, 2017.

[31] *Hall*, 300 F.3d at 1203.

[32] *Murphy*, 619 F.3d at 1163.

[33] Docket no. 36-1, filed May 15, 2017.

[34] Docket no. 36-2, filed May 15, 2017.

[35] Docket no. 36-3, filed May 15, 2017.

[36] Docket no. 36-4, filed May 15, 2017.

[37] *Hall*, 300 F.3d at 1205.

[38] Boothe's Opposition at 13.

are the administrators of the Plan. Thus, there is an inherent conflict of interest and the review is less deferential."[39] To what admission Boothe refers is not clear. She may be referring to one of the "Additional Facts regarding conflict of interest" that she includes in her opposition. She states:

1. Defendants include as background facts essential facts regarding conflict of interest, namely:

   > The defendant Deseret Healthcare Employee Benefits Trust is a self-funded voluntary employees' beneficiary association, established under Section 501(c)(9) of the Internal Revenue Code, which provides for the payment of life, health, accident or other benefits to its members, who are employees of entities that are owned by or affiliated with The Church of Jesus Christ of Latter-day Saints. These benefits are collectively referred to and administered as a single "Deseret Healthcare Employee Benefits Plan." (Def. Motion for summary judgment "Separate Background Statement of Facts" paragraph 1.) The defendant DMBA is a non-profit corporation, separate from the Trust, which acts as trustee of the Trust and handles claims administration for the Trust and processes claims for benefits. *Id. at* para. 3.

This paragraph does not support an argument for an inherent conflict of interest. It undercuts it. Boothe seems to misunderstand or ignore the difference between DMBA and the Trust. Pamela J. Larsen, "Director and Senior Associate Counsel at Deseret Mutual Employee Benefits Trust,"[40] details the nature of the relationship between the two.[41] She summarizes: "The Trust is the payor of the Plan. DMBA administers the Plan and by so doing makes benefit eligibility determinations in accordance with the Plan's specifications. But payment under the Plan is not made by DMBA. It is made by the Trust."[42] Boothe never addresses this distinction. The distinction, however, eliminates any issue of inherent conflict.

---

[39] *Id.*

[40] Declaration of Pamela J. Larsen ¶ 2, docket no. 36-1, filed May 15, 2017.

[41] *Id.* ¶ 3–10.

[42] *Id.* ¶ 10.

Therefore, there are no facts on the record that demonstrate an inherent conflict of interest between DMBA and the Trust. Boothe's related arguments fail.

### 3. Nothing supports the allegation of supervisor interference.

Boothe also argues that "[a] conflict exists in the present case where the [sic] Ms. Boothe worked directly for and was ultimately fired by the persons making the decision on her disability application."[43] Specifically, Boothe argues that Allison Neuteboom, who had been her direct supervisor was "a member of the [Claims Review Committee] meeting that upheld the denial of [Boothe's] application."[44] And that Jana Sybrowsky, a DMBA executive with whom Boothe had worked, "had intervened in the claim and caused the initially favorable decision to be changed to unfavorable."[45] Boothe argues that Neuteboom and Sybrowsky, who allegedly had personal biases against her, were given the opportunity to harm her efforts to obtain disability benefits because "the administrator took no precautions to protect [Boothe's] identity."[46]

It is true that a conflict of interest can be created "when corporate officers and directors serve in a dual fiduciary capacity, with simultaneous duties running both to beneficiaries, in their capacity as plan trustees, and to shareholders, as directors of the corporation."[47] But Boothe's argument does not suggest this type of conflict. Instead, Boothe seems to be arguing that her former supervisors interfered with her protected rights, a claim that would properly be brought under Section 510 of ERISA.[48]

---

[43] Boothe's Opposition at 13.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Holdeman v. Devine*, 572 F.3d 1190, 1193 (10th Cir. 2009).

[48] 29 U.S.C. § 1140.

"In order to state a section 510 claim a plaintiff must allege: 1. prohibited employer conduct; 2. taken for the purpose of interfering; 3. with the attainment of any right to which the employee may become entitled."[49]

Even construing Boothe's allegations against her former supervisors as Section 510 claims, Boothe fails to fully allege or support the requisite elements. First, regarding Allison Neuteboom, Boothe has misread the record. The CRC minutes from December 4, 2014, state that Allison Neuteboom was in attendance.[50] Boothe's claim was not discussed on December 4, 2014.[51] The minutes for the January 29, 2015, meeting immediately follow the minutes for the December 4, 2014, meeting.[52] Boothe's claim was discussed in the January 29, 2015, meeting.[53] Allison Neuteboom was not in attendance.[54] Boothe seems to have carried the attendance list over from one meeting to another. Neuteboom avers that she is not a member of the CRC and that she did not attend that January 29, 2015, meeting.[55] Pamela J. Larsen makes similar averments.[56] In short, Boothe's arguments against Neuteboom are weak and unsupported.

Second, regarding Jana Sybrowsky, Boothe's averments fail to support a 510 claim. Boothe states "I was informed by Lisa Bosley, who handled my claim, that my claim had been approved. However, I was later informed by Lisa that Jana Sabrowski, one of the vice presidents, had pulled the claim and changed it to a denial."[57] Bosley flatly denies making those statements:

---

[49] *Romero v. SmithKline Beecham*, 309 F.3d 113, 119 (3d Cir. 2002) (internal quotation marks omitted).

[50] Record at 23.

[51] *Id.* at 23–24.

[52] *Id.* at 25–29.

[53] *Id.*

[54] *Id.*

[55] Declaration of Allison Neuteboom ¶¶ 3–6.

[56] Declaration of Pamela J. Larsen ¶¶ 11–18.

[57] Affidavit of Kathy Boothe ¶ 14.

"I never told Ms. Boothe that her application had been approved, and I never told her that Ms. Sybrowsky had caused her application to be denied."[58] And Sybrowsky denies having anything to do with Boothe's denial:

> I hereby attest to the fact that I had nothing whatsoever to do with DMBA's denial of Ms. Boothe's application for disability benefits. I was not involved in any degree with the decision to deny her application. And I certainly did not intervene in any respect in DMBA's process of evaluating and eventually denying Ms. Boothe's application. That process was undertaken completely independent of me.[59]

Putting the possible evidentiary issues aside, Boothe's assertions regarding Sybrowsky are insufficient to rise to the level of interference. Supposing that Sybrowsky could and did intervene to change Boothe's claim status, there is nothing to indicate that intervening was *necessarily* prohibited conduct. Or that Sybrowsky did that for the express purpose of interfering, as opposed to fulfilling a fiduciary obligation she may have to the beneficiaries or shareholders. Simply stated, Boothe fails to show interference.[60]

Finally, DMBA's efforts to protect Boothe's information were satisfactory. And anyway, given the rulings above, this argument is moot. Therefore, Boothe's arguments regarding supervisor interference fail. Any facts related to these arguments are immaterial.

## B.  UNDISPUTED MATERIAL FACTS

The following Undisputed Material Facts are quoted directly from Defendants' Motion. Boothe makes general observations about each fact listed in the Motion.[61] She does not make the

---

[58] Declaration of Lisa Bosley ¶ 6.

[59] Declaration of Jana Sybrowsky ¶ 5.

[60] *See Romero*, 309 F.3d at 119 ("Romero's vague allegations of malicious termination, unsupported by any facts, are insufficient.").

[61] Boothe's Opposition at 2–3.

effort to respond to each allegation individually.[62] Nor does she dispute the allegations. Instead, she copies wholesale the facts listed in her separate motion[63] and labels them "Additional Facts regarding conflict of interest"[64] and "Additional facts regarding substantial evidence of disability."[65] This practice violates DUCivR 56-1(c) and is strongly discouraged. Many of Boothe's Additional Facts are—at best—repetitive and overlap with those listed in the Motion; others misrepresent or misinterpret the Record.

1. The defendant Deseret Healthcare Employee Benefits Trust is a self-funded voluntary employees' beneficiary association, established under Section 501(c)(9) of the Internal Revenue Code, which provides for the payment of life, health, accident or other benefits to its members, who are employees of entities that are owned by or affiliated with The Church of Jesus Christ of Latter-day Saints. These benefits are collectively referred to and administered as a single "Deseret Healthcare Employee Benefits Plan."[66]

2. The Trust also qualifies for exemption from federal income tax under Section 501(c)(9) of the Internal Revenue Code, because no part of the net earnings of the Trust inures, other than by payment of life, sick, accident, or other benefits to its members or their dependents

---

[62] *Id.* ("The factual statements appearing at paragraph 6 through 19 are undisputed insofar as they do demonstrate the element that Plaintiff is seeking rights due under the benefits. Nevertheless, they are incomplete and, to the extent they imply the plaintiff is able to work less than 70%, are misleading. Additional facts regarding substantial evidence of disability are included below"; "The factual statements appearing at paragraph 20 through 36 are incomplete and, to the extent they imply that the decision of the Defendants was proper, are misleading. The complete statements are found in Plaintiff's Motion to establish the following undisputed facts.").

[63] *See* Boothe's Motion at 3–12.

[64] Boothe's Opposition at 3–4.

[65] *Id.* at 4–10.

[66] Defendants' Motion at vii; Boothe's Opposition at 3; Boothe's Motion at 4. Though Boothe never affirmatively states that these facts are undisputed, she quotes them approvingly in her opposition and uses them as facts in her motion.

or designated beneficiaries, to the benefit of any private shareholder or individual, and substantially all of its operations are in furtherance of providing these benefits.[67]

3.  The defendant DMBA is a non-profit corporation, separate from the Trust, which acts as trustee of the Trust and handles claims administration for the Trust and processes claims for benefits.[68]

4.  Boothe was an employee at DMBA commencing in approximately 1991, and worked most recently as an auditor in DMBA's Member Services department. Boothe provided support for retirement benefits administered by DMBA under a separate Deseret Mutual Employee Pension Plan Trust.[69]

5.  DMBA provided Plan benefits to certain of its own employees, including Boothe.[70]

6.  Boothe, during her employment with DMBA, was a participant in the Plan.[71]

7.  The Plan provides benefits for eligible employees who are "unable to perform at least 70% of [their] regular job duties because of illness or injury as documented by objective medical evidence."[72]

8.  The Plan definition of disability varies based upon the duration of the benefit payments:

> During the first six months of disability payments your benefit eligibility is determined by your inability to work in your own occupation. To qualify for

---

[67] Defendants Motion at vii (Boothe never addresses fact).

[68] Defendants' Motion at viii; Boothe's Opposition at 3; Boothe's Motion at 4. *See infra* n.63.

[69] Defendants' Motion at viii; Boothe's Opposition at 3–4. Boothe does not directly address this fact, but she corroborates the substance of these facts in her opposition.

[70] Defendants' Motion at viii; Boothe's Affidavit ¶ 7.

[71] Defendants' Motion at viii; Boothe's Affidavit ¶ 8.

[72] Defendants' Motion at x (undisputed).

disability benefits, you must have a disabling injury or illness that prevents you from performing at least 70% of the duties of your regular occupation.

After the first six months of disability payments, your benefit eligibility is determined by your inability to work in any occupation. This means to qualify for disability benefit payments, your disability must prevent you from holding a *comparable job* (any job in the national economy in which you have the ability to earn 70% of your regular monthly income that was in effect on the last day you worked before you became disabled, or your *predisability income*).[73]

9.      The Plan specifies that "[c]overage automatically ends on the earliest of the following dates: The day your employment ends, either voluntarily or involuntarily, such as retirement or termination . . . ."[74]

10.     The Plan, under a section heading entitled "**Notification of Discretionary Authority**," states that "Deseret Mutual has full discretionary authority to interpret the Plan and to determine eligibility." "Deseret Mutual also has the sole right to construe the plan terms." "All Deseret Mutual decisions relating to plan terms or eligibility are binding and conclusive."[75]

11.     On April 24, 2012, Boothe was involved in an automobile accident.[76]

12.     As a result of injuries sustained in the automobile accident, Boothe alleges to have suffered various ailments.[77]

13.     Boothe received treatment from Dr. David B. Thompson, DC, commencing on April 27, 2012, and continuing thereafter.[78]

---

[73] *Id.* at x (undisputed).

[74] *Id.* (undisputed).

[75] *Id.* at x–xi (undisputed).

[76] Defendants' Motion at xi. Boothe states that this and the next 13 facts, up to Undisputed Material Facts ¶ 24, "are incomplete and, to the extent they imply the plaintiff is able to work less than 70%, are misleading." Boothe's Opposition at 2–3. This does not create a disputed material fact.

[77] Defendants' Motion at xi; Boothe's Opposition at 2–3. *See infra* n.76.

[78] Defendants' Motion at xi; Boothe's Opposition at 2–3. *See infra* n.76.

14.     Boothe also received treatment from an orthopedic doctor, Dr. Dennis J. Wyman, MD, commencing on May 14, 2012, and continuing thereafter.[79]

15.     During treatment with Dr. Thompson between April 27, 2012, and November 2, 2012, Boothe's self-reporting of the pain she was suffering diminished from a report of 7 on a scale of 1 to 10 down to a range from 3 to 5 out of 10.[80]

16.      During that same treatment window with Dr. Thompson, Dr. Thompson's assessment of Boothe's medical improvement over time increased from 5% on May 9, 2012, to 55% on November 2, 2012.[81]

17.     On May 14, 2012, Dr. Wyman evaluated Boothe in connection with a Family and Medical Leave Act ("FMLA") physician's certification and indicated that Boothe "[w]ill be able to work 40 hrs/wk if allowed to work from home."[82]

18.     This recommendation was conditioned upon a recommended four-day work-week with one day in the office and three days at home.[83]

19.     Boothe's work schedule was adjusted to accommodate this recommendation.[84]

20.     Dr. Wyman's recommendation continued unchanged in a subsequent letter dated July 17, 2012.[85]

21.     Boothe's employment at DMBA ended on November 2, 2012.[86]

---

[79] Defendants' Motion at xi; Boothe's Opposition at 2–3. *See infra* n.76.

[80] Defendants' Motion at xi; Boothe's Opposition at 2–3. *See infra* n.76.

[81] Defendants' Motion at xi; Boothe's Opposition at 2–3. *See infra* n.76.

[82] Defendants' Motion at xii; Boothe's Opposition at 2–3. *See infra* n.76.

[83] Defendants' Motion at xii; Boothe's Opposition at 2–3. *See infra* n.76.

[84] Defendants' Motion at xii; Boothe's Opposition at 2–3. *See infra* n.76.

[85] Defendants' Motion at xii; Boothe's Opposition at 2–3. *See infra* n.76.

[86] Defendants' Motion at xii; Boothe's Opposition at 2–3. *See infra* n.76.

22.     On December 29, 2012, Boothe completed an application for disability benefits under the Plan.[87]

23.     On January 15, 2013, in connection with Boothe's application for disability benefits, Dr. Wyman submitted a physician's statement regarding Boothe's condition.[88]

24.     In the January 2013 physician's statement, Dr. Wyman reported with regard to work restrictions that Boothe "can work from home as before" and to "see FMLA forms from July 2012."[89]

25.     On March 1, 2013, DMBA received an independent report from Medical Review Institute of America, Inc. ("MRIoA").[90]

26.     In the report, a board certified physician reviewed and reported on the various claims for alleged disabling conditions.[91]

27.     The MRIoA review included evaluation of clinical records, including physician statements, office notes, correspondence, and an MRI report.[92]

28.     The MRIoA physician determined that the clinical findings do not substantiate a disability, and that Boothe had not presented sufficient documentation to reasonably conclude that she was eligible for disability benefits.[93]

---

[87] Defendants' Motion at xii; Boothe's Opposition at 2–3. *See infra* n.76.

[88] Defendants' Motion at xii; Boothe's Opposition at 2–3. *See infra* n.76.

[89] Defendants' Motion at xii; Boothe's Opposition at 2–3. *See infra* n.76.

[90] Defendants' Motion at xiii. Boothe states that this and the remaining 15 facts "are incomplete and, to the extent they imply that the decision of the Defendants was proper, are misleading." Boothe's Opposition at 3. This does not create a disputed material fact.

[91] Defendants' Motion at xiii; Boothe's Opposition at 3. *See infra* n.90.

[92] Defendants' Motion at xiii; Boothe's Opposition at 3. *See infra* n.90.

[93] Defendants' Motion at xiii; Boothe's Opposition at 3. *See infra* n.90.

29.     This was due in part to physician reports of normal sensation and gait in Boothe's examination one month after the accident and no loss of motor power from that time period despite the claim for disability on these grounds in January 2013.[94]

30.     On March 8, 2013, DMBA denied Boothe's application.[95]

31.     On June 4, 2014, Boothe, through counsel, appealed DMBA's denial of benefits.[96]

32.     The stated grounds for such appeal were that DMBA's determination "was based on an improper focus on a few physical exam findings," "appeared to focus solely on one medical condition," and "does not place proper consideration on the opinions and findings of treating medical providers."[97]

33.     On July 1, 2014, DMBA responded to the Boothe appeal and affirmed the prior denial of benefits.[98]

34.     In the July 1 response, DMBA confirmed for Boothe that "[a]ll documentation provided by the Participant was reviewed by [DMBA] and… MRIoA," that DMBA "reviewed all medical documentation provided by the Participant," and that all "medical documentation presented by the Participant from the treating medical providers was evaluated by both [DMBA] and MRIoA…."[99]

35.     On August 27, 2014, Boothe, through counsel, submitted a further appeal of

---

[94] Defendants' Motion at xiii; Boothe's Opposition at 3. *See infra* n.90.

[95] Defendants' Motion at xiii; Boothe's Opposition at 3. *See infra* n.90.

[96] Defendants' Motion at xiii; Boothe's Opposition at 3. *See infra* n.90.

[97] Defendants' Motion at xiii–xiv; Boothe's Opposition at 3. *See infra* n.90.

[98] Defendants' Motion at xiv; Boothe's Opposition at 3. *See infra* n.90.

[99] Defendants' Motion at xiv; Boothe's Opposition at 3. *See infra* n.90.

DMBA's denial of benefits.[100]

36.     On November 6, 2014, Boothe supplemented the August 27 appeal with a restated and additional argument and a Vocational Assessment Report dated November 5, 2014.[101]

37.     On January 29, 2015, the DMBA Claims Review Committee ("CRC") met to consider Boothe's appeal of the prior denial of benefits.[102]

38.     The CRC was presented with a factual history of the claims administration.[103]

39.     The CRC was also presented a redacted copy of the November 6, 2014 appeal letter, removing only personal identifying information to ensure that the CRC review was confidential and without disclosure of the identity of the individual appellant.[104]

40.     After consideration, the CRC denied Boothe's appeal.[105]

41.     This denial was communicated to Boothe, through counsel, via letter dated February 5, 2015.[106]

## C.  DISCUSSION

### 1.  DMBA's decision to deny Boothe benefits will be reviewed under the abuse of discretion standard.

Boothe's argues that the denial of benefits should be reviewed de novo—or at least something higher than the arbitrary and capricious standard—because there is an inherent

---

[100] Defendants' Motion at xiv; Boothe's Opposition at 3. *See infra* n.90.

[101] Defendants' Motion at xiv; Boothe's Opposition at 3. *See infra* n.90.

[102] Defendants' Motion at xiv; Boothe's Opposition at 3. *See infra* n.90.

[103] Defendants' Motion at xiv; Boothe's Opposition at 3. *See infra* n.90.

[104] Defendants' Motion at xv; Boothe's Opposition at 3. *See infra* n.90.

[105] Defendants' Motion at xv; Boothe's Opposition at 3. *See infra* n.90.

[106] Defendants' Motion at xv; Boothe's Opposition at 3. *See infra* n.90.

conflict of interest between DMBA and the Trust[107] and because there was supervisor interference.[108]

Under 29 U.S.C. § 1132(a)(1)(B)[109] a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." When a participant or beneficiary brings an action under Section 1132(a)(1)(B), the court reviews the denial of benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[110] "Where the plan gives the administrator discretionary authority . . . [the court] employ[s] a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."[111] If, however, there is a conflict of interest between the plan administrator and the payor, then the reviewing court uses the sliding scale approach: In "a sliding scale approach . . . the reviewing court will always apply an arbitrary and capricious standard, but will decrease the level of deference given in proportion to the seriousness of the conflict."[112]

The Plan gives DMBA discretionary authority. The Plan, under a section heading entitled "**Notification of Discretionary Authority**," states that "Deseret Mutual has full discretionary authority to interpret the Plan and to determine eligibility."[113] "Deseret Mutual also has the sole

---

[107] Boothe's Opposition at 12–13.

[108] *Id.* at 13–15.

[109] The codification of ERISA Section 502(a)(1)(B).

[110] *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1130 (10th Cir. 2011) (internal alterations and quotation marks omitted).

[111] *Id.*

[112] *Murphy*, 619 F.3d at 1158 (internal quotation marks omitted) (punctuation normalized).

[113] Undisputed Material Facts ¶ 10.

right to construe the plan terms."[114] "All Deseret Mutual decisions relating to plan terms or eligibility are binding and conclusive."[115] These statements are sufficient to demonstrate that that "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,"[116] thus triggering greater deference for DMBA's decision.

There is no need to "decrease the level of deference" accorded DMBA.[117] There is no conflict of interest.[118] And Boothe's interference arguments fail.[119] Therefore, because the Plan gives DMBA discretionary authority, and because there is no reason to reduce the level of deference accorded DMBA's decision, DMBA's decision to deny benefits will be reviewed under a "pure"[120] arbitrary and capricious standard.[121]

**2. DMBA's decision to deny Boothe benefits was not arbitrary or capricious.**

Boothe argues that DMBA "failed to provide substantial evidence of [its] decision."[122] Specifically, Boothe argues that DMBA and the reviewing doctor failed to consider and give proper weight to all of Boothe's medical assessments.

---

[114] *Id.*

[115] *Id.*

[116] *Eugene S.*, 663 F.3d at 1130 (internal alterations and quotation marks omitted).

[117] *Murphy*, 619 F.3d at 1158.

[118] *See infra* Section A.2.

[119] *See infra* Section A.3.

[120] *See Eugene S.*, 663 F.3d at 1133 (referring to full arbitrary and capricious deference as the "pure" arbitrary and capricious standard).

[121] Boothe, in the end, seems to concede this conclusion: "The standard of review is whether the denial was an abuse of discretion or arbitrary and capricious." Boothe's Opposition at 15.

[122] *Id.*

Under the arbitrary and capricious standard, courts ask only whether the decision "was reasonable and made in good faith."[123] "Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary."[124] The Tenth Circuit defines "substantial evidence": "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker."[125] Substantiality considers the "record as a whole," and courts must "take into account whatever in the record fairly detracts from its weight."[126] Though, "the Administrator's decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within his knowledge to counter a claim that it was arbitrary or capricious."[127] "The reviewing court need not only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end."[128] Therefore, the burden is on the plaintiff to show that the decision was "not grounded on *any* reasonable basis."[129]

Deciding whether Boothe should have been awarded benefits is necessarily limited in scope. First, there is an evidentiary cutoff date. The Plan specifies that "[c]overage automatically ends on the earliest of the following dates: The day your employment ends, either voluntarily or involuntarily, such as retirement or termination . . . ."[130] Boothe's employment at DMBA ended

---

[123] *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008).

[124] *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002).

[125] *Id.* (internal quotation marks omitted).

[126] *Id.* (internal quotation marks omitted).

[127] *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (internal quotation marks and alteration omitted).

[128] *Id.*

[129] *Id.* (emphasis in original).

[130] Undisputed Material Facts ¶ 9.

on November 2, 2012.[131] Therefore, all evidence supporting Boothe's claim for disability that was developed after November 2, 2012, is irrelevant and will not be considered.

Second, the inquiry is limited to whether that pre-November 2, 2012, evidence satisfies the Plan's definition of disability. The Plan provides benefits for eligible employees who are "unable to perform at least 70% of [their] regular job duties because of illness or injury as documented by objective medical evidence."[132]

With those limitations in mind, the evidence in the Record shows DMBA's decision to deny Boothe's claim was reasonable. Prior to Boothe's November 2, 2012, termination, Boothe received treatment from Dr. David B. Thompson, DC,[133] and Dr. Dennis J. Wyman, MD.[134] Their reports are the principal bases for DMBA's decision to deny Boothe's application and appeal.

Dr. Thompson's pre-termination reports provide a basis for deciding that Boothe was not disabled under the Plan's definition of disability. During treatment with Dr. Thompson between April 27, 2012, and November 2, 2012, Boothe's self-reporting of the pain she was suffering diminished from a report of 7 on a scale of 1 to 10 down to a range from 3 to 5 out of 10.[135] And during that same time period, Dr. Thompson's assessment of Boothe's medical improvement over time increased from 5% on May 9, 2012, to 55% on November 2, 2012.[136]

Dr. Wyman's pre-termination reports also provide a basis for deciding that Boothe was not disabled under the Plan's definition of disabled. On May 14, 2012, Dr. Wyman evaluated

---

[131] *Id.* ¶ 21.

[132] *Id.* ¶ 7.

[133] *Id.* ¶ 13.

[134] *Id.* ¶ 14.

[135] *Id.* ¶ 15.

[136] *Id.* ¶ 16.

Boothe in connection with an FMLA physician's certification and indicated that Boothe "[w]ill be able to work 40 hours/wk if allowed to work from home."[137] This recommendation was conditioned upon a recommended four-day work-week with one day in the office and three days at home.[138] Boothe's work schedule was adjusted to accommodate this recommendation.[139] Dr. Wyman's recommendation continued unchanged in a subsequent letter dated July 17, 2012.[140]

After Boothe applied for disability benefits under the Plan, two relevant post-termination reports were submitted. Each confirmed the earlier reports. Dr. Wyman reported with regard to work restrictions that Boothe "can work from home as before" and to "see FMLA forms from July 2012."[141] And an independent report from the Medical Review Institute of American, Inc., determined that Boothe had not presented sufficient documentation to reasonably conclude that she was eligible for disability benefits.[142]

The foregoing evidence is substantial and "adequate to support the conclusion reached by" DMBA.[143] Boothe failed to meet her burden to show that DMBA's denial was "not grounded on *any* reasonable basis."[144]

### 3. ERISA § 501(a)(3) does not apply.

In her motion, Boothe argues that "if the court finds that [sic] administrators [sic] actions under the plan were appropriate, the administrator violated their [sic] fiduciary responsibility by

---

[137] *Id.* ¶ 17.

[138] *Id.* ¶ 18.

[139] *Id.* ¶ 19.

[140] *Id.* ¶ 20.

[141] *Id.* ¶ 24.

[142] *Id.* ¶ 28.

[143] *Caldwell*, 287 F.3d at 1282 (internal quotation marks omitted).

[144] *Kimber*, 196 F.3d at 1098 (emphasis in original).

terminating plaintiff prior to her eligibility."[145] That is, Boothe argues that if "the Court finds that Ms. Boothe was not eligible at the time she stopped working the only other place for equitable relief is found under 502(a)(3)."[146]

> Section 502(a)(3) states that a civil action may be brought
>
> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.[147]

In *Varity Corp. v. Howe*,[148] the Supreme Court states that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate."[149] In *Varity*, the Court determined that because the litigants could not bring a claim under § 502(a)(1)(B) and "must rely on the *third* subsection or they have no remedy at all" it was appropriate for them to proceed under Section 502(a)(3).[150] In other words, Section 502(a)(3) was intended to be a "catchall," to cover those "violations that § 502 does not elsewhere adequately remedy."[151] It is not intended to be an opportunity for the litigant to "repackage his or denial of benefits claim as a claim for breach of fiduciary duty."[152]

---

[145] Boothe's Motion at 20.

[146] *Id.*

[147] 29 U.S.C. § 1132.

[148] 516 U.S. 489 (1996).

[149] *Id.* at 515 (internal quotation marks omitted).

[150] *Id.* (emphasis in original).

[151] *Id.* at 512.

[152] *Id.* at 513 (internal quotation marks omitted); *see also Moore v. Berg Enterprises, Inc.*, No. 98-4080, 1999 WL 1063823, at *2 n.2 (10th Cir. Nov. 23, 1999) (unpublished) ("Accordingly, under the undisputed circumstances of this case, Moore is not entitled to repackage his denial of benefits claim as a claim for breach of fiduciary duty and seek relief under section 1132(a)(3).") (internal quotation marks and alterations omitted).

Boothe's argument that Section 502(a)(3) should be applied in the alternative is a straightforward example of repackaging a "denial of benefits claim as a claim for breach of for fiduciary duty."[153] She cannot rotate through the potential bases for ERISA civil enforcement actions until she lights on the one that sticks. Here action was properly brought under Section 502(a)(1)(B).

Moreover, even if Boothe could bring this action under Section 502(a)(3), her arguments have no record support. They are only conjectural. Boothe states

> When the administrators took actions to terminate Boothe's employment it was to protect the Plan as they anticipated that she would soon be eligible for benefits under the Plan . . . . There was no other reason for her termination. Defendants were aware of her condition as she had taken time off work under FMLA. Furthermore, they were aware of her deteriorating condition. They were aware that if she was not eligible she would soon be eligible for benefits. They then took action to terminate her employment to prohibit her from making a claim when her injury had reached a level of incapacitation that she would qualify for benefit plans. The Defendants' actions prior to eligibility were taken to protect the Plan from payout and to deny the plaintiff's claim.[154]

Boothe gives no supporting citations. This is a baseless parting shot. Arguing facts not in the record is strongly discouraged and can justify Rule 11 sanctions.[155]

Boothe cannot bring her action under ERISA § 503(a)(3).

---

[153] *Varity*, 516 U.S. at 513.

[154] Boothe's Motion at 21.

[155] Fed. R. Civ. P. 11(b)(3) (by presenting any papers to the court, an attorney certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.").

## D. ORDER

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment and Supporting Memorandum[156] is GRANTED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Countermotion for Summary Judgment and Supporting Memorandum[157] is DENIED.

The clerk of the court is directed to CLOSE this case.

Signed June 27, 2017.

BY THE COURT

District Judge David Nuffer

---

[156] Docket no. 24, filed March 1, 2017.

[157] Docket no. 35, filed May 1, 2017.